## Hutchinson Estate

Robert H. Arronson, Harry Fischer, Bernard A. Fischer and Herbert H. Hadra, for exceptants.

Duane, Morris & Heckscher, contra.

SAYLOR, J., June 24, 1966.—Two sisters, a brother, two nephews and a niece of a deceased settlor, having interests in a trust established by his deed, have filed exceptions to the rulings of an auditing judge approving the trustee's disbursements of principal in payment of death taxes and debts owing by decedent. The guardian and trustee ad litem representing minor and possible future interests has approved the payments.

Decedent, by deed of trust dated March 8, 1956, as amended on May 20, 1957, transferred $250,000 in trust to pay the net income to himself for life, and upon his death to his wife, Sally M. Hutchinson, for her life, with provision for payment to her out of principal of such sums as the trustee in its sole discretion shall deem necessary for her "comfortable maintenance and support after taking into consideration all other resources of my wife". Upon the death of the wife, the remaining principal is to be distributed in equal shares to settlor's brothers and sisters or their issue, per stirpes, and in default thereof, to The Salvation Army.

Settlor died on December 14, 1962, a resident of Florida. By his will, there probated, he left tangible personal property to his wife, with residue to the trust estate. He had no children. The estate that upon his death was taxable consisted of the principal of the trust, property held with his wife as tenants by the entireties, and the property passing under his will.

The account of the trustee under the deed was filed following payment of various taxes on all that property of decedent. The account contains two credits which are challenged. One item of $70,137.76 was disbursed to the personal representative for payment of Federal estate and Florida estate taxes. The other was for $5,-698.08, disbursed to the personal representative to defray a deficit incurred in the administration of settlor's probate estate, as shown in an informal account of executrix.

Exceptants contended that the death tax payments attributable solely to the trust should have been apportioned between the income and the remainder interests. This would require recoupment by the trust from the widow of $21,658.77.

The learned auditing judge decided that such an apportionment would not only be inequitable, but would also be contrary to the provisions of the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, and the express language of the deed of trust hereinafter referred to.

Section 3 (b) of the Act of 1951 provides as follows:

"When estate tax shall be apportioned in a situation involving both a present and future interest, the amount apportioned, including interest and penalties, shall be paid entirely from principal, even though the holder of the present interest also has the rights in the principal".

Since in their exceptions no reference is made to the matter of apportionment, it has not been further pursued.

Exceptants, however, contend that the trustee was without power to pay out trust principal for such Federal and Florida estate taxes as were attributable to property that on settlor's death passed directly to his widow outside the trust. Counsel have stipulated that $15,300.03 is so attributable.

Settlor's total gross estate exceeded $725,000, somewhat less than one half of which was in the trust. Somewhat more was jointly held property, most of which qualified for the Federal estate marital deduction and, hence, was tax free. No trust assets qualified for such deduction. Approximately only $4,000 comprised settlor's residuary estate under the will.

Nearly all of the property passing directly to the widow consisted of mortgages and residential and commercial real estate. Of the $4,000, shares of stock

having no market were appraised for tax purposes at $2,500, and at that figure distributed to the trust under the deed.

Section 4(a) of the Act of 1951 requires apportionment of death taxes attributable to non-testamentary property passing to settlor's widow, in the absence of a contrary provision in the deed. Section 3(a) of the statute provides:

"A . . . settlor . . . may direct how the estate tax shall be apportioned or allocated. . . . Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction. . . ."

Paragraph 4 of the deed of trust, as amended in 1957, gives the trustee the following power:

"J. To pay any of my debts, funeral expenses or any death taxes resulting from my death, if, in its discretion, such payment will benefit the persons interested in this Trust or avoid the necessity of selling any asset in my estate which it might be desirable to retain. Any such payment shall be made out of the principal of this trust, but no claim for any such payment shall be enforceable against the trustee by reason of this provision".

To support their contention that the learned auditing judge erred in approving the disbursement for taxes, the exceptants emphasize the import of the qualifying clause: ". . . if, in its discretion, such payment will benefit the persons interested in this Trust". Only the life tenant was benefited, and the word "persons," being in the plural, means all persons, necessarily including the remaindermen.

This interpretation of the clause is unreasonable. As the payment of taxes out of trust principal could not possibly benefit parties in interest because of the

resulting diminution of principal, it must be concluded that it was primarily the widow, not collateral parties, that settlor sought to benefit by such payment. As is shown by the deed and the will, the widow of settlor was the primary object of his bounty. A brother and sisters and more remote collateral parties were not in that category.

Nor is the authorization to pay taxes limited to those attributable to trust assets. "Death taxes resulting from my death" necessarily include those taxes which were imposed on the extra-testamentary assets passing to the widow by reason of settlor's death. So, too, of course, were taxes due on the estate passing under the will. To have found otherwise, the learned auditing judge would have had to rule that the language of settlor giving authority to the trustee to pay out of principal taxes due because of his death was meaningless. The only reasonable construction of the quoted language is that the trustee had been given power to pay death taxes to the extent that such payment would benefit any person interested in the trust. Clearly, the wife was the primary person intended by settlor to receive such benefit.

The trust deed evidences settlor's desire to protect his wife during her life by provision for the payment to her of all trust income and, in addition, such principal as was found necessary for her "comfortable maintenance and support after taking into consideration all other resources of my wife".

The clause in the trustee's power above quoted, reading: ". . . to avoid the necessity of selling any asset in my estate which it might be desirable to retain . . .", evidences settlor's desire to relieve his wife of the burden of paying taxes from her own assets which, as stated, consisted largely of interests in residential and commercial real estate. The trust assets were liquid. Had not the trustee paid all death taxes out of trust

principal, the intent of settlor would have been disregarded and the power bestowed upon the trustee by the deed rendered ineffective. The learned auditing judge properly decided that the trustee had not abused that power.

Respecting the payment of $5,698.08 to the executrix of the probate estate, it is noted that the reference to this item in the account as "reimbursement for counsel fee and commissions to Girard Trust Bank" is incorrectly stated. What the trustee paid was a deficit in that amount resulting from the payment by the executrix of funeral and administration expenses and the bill of the Florida lawyer for services rendered the estate. While that bill was for $7,500, which on its face would appear to be out of proportion to the approximately $10,000 gross probate estate, it is a fact that the services rendered by counsel were considerable in settling the tax problems due by reason of settlor-testator's death. Furthermore, the trustee satisfied itself that counsel had also a claim for substantial services rendered decedent in his lifetime, for which payment had never been made.

Exceptants argue that the Florida attorney was paid his fee, along with other items making up the deficit, on July 2, 1964, whereas it was many months before an explanatory letter was received by trustee under date of December 15, 1965, the day before the audit of the account. They also question the admissibility of the correspondence between attorney and trustee. Actually, this letter and the one of January 7, 1964, are contained in the record. Copies are attached to exceptants' brief. The letters were presented to the auditing judge and counsel and are considered as evidence. It is reasonable to conclude that the letter of December 15, 1965, confirmed the data possessed by the trustee when it paid the deficit resulting from the payment of the fee months previously. In the letter of

January 7, 1964, the attorney stated that over many years during decedent's lifetime, the attorney had performed services for which he had not made any charge. This constituted a debt due the attorney. As such, it came within the category of payments which the deed empowered the trustee to make out of principal. The second letter confirmed this.

Finally, the contention of exceptants that, to their injury, the trust principal was reduced by more than 50 percent by the disbursement of the two items above discussed is improper and invalid, for the reason that nearly $51,000 of the amount by which principal was diminished represents payment of a loan with interest owing by decedent upon his death. The contention also ignores the transfer to the trust of shares appraised at $2,500 from the probate estate.

In summary, the challenged disbursements were made under the power granted the trustee by settlor, and were made properly within trustee's discretion in benefiting the primary object of the concern of a childless man, who unmistakably intended that his widow's protection should take precedence over that of all others.

The exceptions are dismissed, and the adjudication is confirmed absolutely.